**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| ETHAN EDGERTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AVENUE5 RESIDENTIAL LLC, a Delaware foreign limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:26-cv-02650<br><br>**CLASS ACTION**<br><br>**DECLARATION OF BETSY FILLMORE IN SUPPORT OF DEFENDANT AVENUE5 RESIDENTIAL, LLC'S MOTION TO COMPEL ARBITRATION**<br><br>NOTE ON MOTION CALENDAR: August 28, 2026<br><br>ORAL ARGUMENT REQUESTED |

-1-

DECLARATION OF BETSY FILLMORE ISO
MOTION TO COMPEL ARBITRATION
Case No. 2:26-cv-02650

## DECLARATION OF BETSY FILLMORE

I, Betsy Fillmore declare as follows:

1.	I am a Vice President of Human Resources of Defendant Avenue5 Residential LLC ("Avenue5"). This declaration is submitted in support of Avenue5's Motion to Compel Arbitration, Dismiss or Strike Class Claims, and Stay Action Pending Arbitration.  Through my position at Avenue5, and documents I have access to and custody of as a result of my position, I have personal knowledge of the facts set forth in this declaration and could testify completely thereto.

2.	In my role as Vice President of Human Resources for Avenue5, I am familiar with Avenue5's human resource operations and systems, including its policies and practices pertaining to onboarding and execution of  a mutual arbitration agreement to arbitrate claims ("Arbitration Agreement") signed by Avenue5 and Avenue5 employees ("associates").  In and through the regular scope of my duties, I have regular access to and am familiar with Avenue5's human resource applications, databases, and business records.  From these records, I am able determine whether individuals are current or former associates of Avenue5 and whether such individuals signed Avenue5's Arbitration Agreements, and acknowledged receipt of Avenue5 employment-related policies.  Avenue5's business records referenced in this declaration were prepared and maintained by associates who had a business duty to prepare and maintain such records and the records were kept in the ordinary course of business.  The entries made in Avenue5's business records were made at or near the time of the occurrence of the events recorded in such records.

3.	Avenue5 has provided property management services to over 789 multifamily and single-family properties throughout the United States in 25 states, and is a leading property management company in the United States.  The properties Avenue5 provides services to throughout the United States range in type and size, and include stabilized, urban, suburban, mixed-use, affordable, high-rise, mid-rise, garden, senior, and student communities.  Avenue5 provides a wide-range of services for its property owner client, which include property

DECLARATION OF BETSY FILLMORE ISO
MOTION TO COMPEL ARBITRATION
Case No. 2:26-cv-02650

management, facilities management, maintenance, construction management, due diligence, market analysis, financial underwriting, marketing and communication services, property and resident insurance, purchasing, revenue management, resident screening, human resources, accounting, information technology, and utilities platforms optimization at properties. Avenue5 provides a substantial portion of these support services nationwide from its offices in Washington, and Arizona.  Avenue5 markets and advertises its services nationally.  Avenue5's corporate headquarters are in Washington, and it also has offices in Colorado, California, Arizona, Oregon, Oregon, and Utah.  In order to provide its many services, Avenue5 contracts for goods with multiple different vendors in states across the United States.

4.       In the ordinary course of business, and as a regularly occurring part of my role as the Vice President of Human Resources at Avenue5, I oversee, create and maintain electronic applications used by Avenue5's Human Resources department. I have personal knowledge at a detailed level of how Avenue5's electronic systems function and are used to manage documents, including the third-party human resources management software system, My5, that is operated by Exponent HR.

5.       As part of Avenue5's use of My5 and its other human resources management systems, Avenue5 is able to query certain personnel information about associates employed by Avenue5 nationwide.  Specifically, in relation to this lawsuit, I performed a query to determine the hire date and position of Ethan Edgerton while he worked for Avenue5.  Based on the results, I determined Mr. Edgerton was employed as Leasing Consultant in Puyallup, Washington as a non-exempt hourly employee from approximately December 4, 2024 to June 22, 2026.  In that role Plaintiff was responsible for coordinating all activities related to apartment rentals, move-ins, move-outs, and lease renewals.  Furthermore, in this position, Plaintiff was also responsible for interacting with prospective and current residents to ensure maximum occupancy, resident retention, and client satisfaction.

6.       In addition to being used to collect, store, track, and administer general personnel and human resources information of various kinds, Avenue5 uses My5, in relevant

-3-

DECLARATION OF BETSY FILLMORE ISO
MOTION TO COMPEL ARBITRATION
Case No. 2:26-cv-02650

part, to onboard associates, including to disseminate for review and electronic signature onboarding documents, employment-related policies, and Arbitration Agreements. I have personal knowledge of and am familiar with how My5 has been used by Avenue5 to send Arbitration Agreements to associates, and how the Arbitration Agreements are processed and stored after associates sign the Arbitration Agreements. The Arbitration Agreement was a condition of employment and provided separately from other pre-hire documents given to associates.

7.       The process each associate must follow to review and execute the Arbitration Agreement at the time of Mr. Edgerton's hire was the same. Associates were presented with a stand-alone Arbitration Agreement via the My5 portal, and were given at least three days to review the Arbitration Agreement prior to signing the agreement through the My5 portal. My5 required associates to execute the Arbitration Agreement electronically.

8.       To access the My5 portal, associates must first provide a personal email address to Avenue5. My5 then sends the associate an introductory email to their personal email address, which prompts the associate with a unique link to set up their account via the My5 portal to start their onboarding. Upon accessing the My5 portal with the link provided, the associate provides their last name, social security number, home zip code, birth date, and creates and answers a security question. My5 also creates a username for the associate, which the associate can change at this time. After providing that information, the associate is required to create a unique passcode, known only to the associate. Avenue5 does not have access to associates' unique passcode. Only the associate who created the unique password knows that password and has access to it. Avenue5 is not capable of disclosing to any person the unique password corresponding to an associate's account. The unique password that the associate, including Mr. Edgerton, created was and is known only to that associate, and is not known to any Avenue5 managers or Avenue5 system administrators.

9.       To review the Arbitration Agreement through My5, associates must log into their My5 account using their unique username and passcode, go to the employee Onboarding

-4-

DECLARATION OF BETSY FILLMORE ISO
MOTION TO COMPEL ARBITRATION
Case No. 2:26-cv-02650

section, and select "Arbitration Agreement."  The associate is then able to review the Arbitration Agreement, without any restrictions as to time.  After completing their review of the Arbitration Agreement, the associate could either: (1) agree to the Arbitration Agreement by clicking "Acknowledge & Complete Task" or (2) not agree to the Arbitration Agreement, by clicking "Exit."  If an associate clicks "Exit," the arbitration agreement window closes and the associate is directed back to the message center of the My5 portal.  If an associate clicked the button "Acknowledge & Complete Task," My5 creates and maintains a completed acknowledgement for the associate, and a record of the date and time that the associate clicked the "Acknowledge & Complete Task" button.

10.    Mr. Edgerton completed the same process outlined above to sign his Arbitration Agreement.  Based on my review of Avenue5's human resources management system, on November 21, 2024, My5 sent an email to the personal email address that he provided (ethanedgerton2@gmail.com), which prompted him to set up and access his My5 account and Avenue5's onboarding portal.  Mr. Edgerton set up his My5 account on November 22, 2024.

11.    To review the Arbitration Agreement through My5, Mr. Edgerton had to log into his My5 account using his unique passcode and go to the employee Onboarding section and select "Arbitration Agreement."  Mr. Edgerton was then able to review the Arbitration Agreement, without any restrictions as to time.  After completing his review of the Arbitration Agreement, Mr. Edgerton could either: (1) agree to the Arbitration Agreement by clicking "Acknowledge & Complete Task" or (2) not agree to the Arbitration Agreement, by clicking "Exit."  Based on review of Mr. Edgerton's records in My5, and as discussed further below, Mr. Edgerton clicked "Acknowledge & Complete Task."

12.    I have reviewed Mr. Edgerton's My5 records and found a completed acknowledgment for Mr. Edgerton, which states "Acknowledged on 12/06/2024 11:19:14 AM by E. Edgerton."  This means that Mr. Edgerton clicked the "Acknowledge & Complete Task" button at approximately 11:19  a.m. on December 06, 2024.  Mr. Edgerton's. acknowledgment reads "This is to acknowledge that I have received and read a copy of the Arbitration Program

DECLARATION OF BETSY FILLMORE ISO
MOTION TO COMPEL ARBITRATION
Case No. 2:26-cv-02650

Overview, Questions and Answers, and Mutual Arbitration Agreement . . . I acknowledge that (1) the Agreement contains a binding arbitration provision, (2) I have read the Agreement, (3) I understand its terms, and (4) I have voluntarily decided to accept the terms of the Agreement. I further understand that this arbitration provision requires that all disputes covered by the Agreement must be submitted to arbitration pursuant to the Agreement rather than to a judge and jury in court." Furthermore, as part of the Agreement, Avenue5 agreed to arbitrate any claims it may have against Mr. Edgerton. A true and correct copy of the Arbitration Agreement and Mr. Edgerton's completed acknowledgment is attached as **Exhibit A**.

DATED in this 28th day of July, 2026.



BETSY FILLMORE

-6-

# EXHIBIT A



# Employee Onboarding

**Home  >  To Do  >  E-Sign Document**

*Acknowledged on 12/06/2024 11:19:14 AM by E. Edgerton.*



Exit

---

## Avenue5 Residential | Arbitration Agreement | New Associate

*This is to acknowledge that I have received and read a copy of the Arbitration ProgramOverview, Questions and Answers, and Mutual Arbitration Agreement ("Agreement").*

*I understand that if I have any questions about these documents and the Agreement, Ishould contact Human Resources at Laurie Brashear (lbrashear@avenue5.com) orBetsy Fillmore (bfillmore@avenue5.com).*

*I acknowledge that (1) the Agreement contains a binding arbitration provision, (2) Ihave read the Agreement, (3) I understand its terms, and (4) I have voluntarilydecided to accept the terms of the Agreement. I further understand that thisarbitration provision requires that all disputes covered by the Agreement must besubmitted to arbitration pursuant to the Agreement rather than to a judge and jury incourt.*

*By submitting this acknowledgment, I agree to be bound by the Agreement. Inaddition, my acceptance of work or my continuing to work for the Avenue5 followingreceipt of the Agreement will be deemed acceptance of the terms of the Agreementregardless of whether I sign this acknowledgment.*

*The Agreement shall not be construed as a commitment by either party to continue anemployment relationship for any certain period of time, nor modify in any way the at-will status of employment.*

*By clicking on the "Acknowledge" button, I represent that I have reviewed and amaccepting and agreeing to be bound by the terms of the Agreement. I alsoacknowledge and agrees that by clicking on the "Acknowledge" button, I am bindingmyself to the Agreement just the same as if I had signed the Agreement in ink.*

Onboardin...    1  / 8    —    30%    +



## ARBITRATION PROGRAM

### Program Overview

Avenue5 is making updates to its long-standing arbitration program with employees.

Arbitration provides both parties with an expedient alternative to costly and time-consuming litigation in the rare case when disputes arise between the Company and its employees. In arbitration, claims are heard by a neutral third-party called an arbitrator. The parties are entitled to have their own attorneys represent them at the arbitration. Some of the benefits of arbitration are that it is generally a faster way of resolving disputes and less expensive for both sides. Arbitrations often provide a much greater level of privacy for both parties. The Company will pay the arbitrator's fees and any administrative and/or filing fees pertaining to the arbitration, where required by law. Otherwise, arbitration fees and costs will be split by the Parties equally.

Attached is a copy of Avenue5 Residential LLC's (the "Company") Mutual Arbitration Agreement ("Agreement"). All employees of the Company are asked to sign the Agreement.

It is important to note that by signing this Agreement, you are not giving up all of your rights as an employee, but only agreeing that both you and the Company will waive rights to have disputes heard by a judge or jury in the court system. You also waive your right to file or participate in a class or collective action, and except as otherwise set forth in the Agreement, a representative action. However, you can still file claims against the Company individually in arbitration.

Under this Agreement, the arbitrator would follow the American Arbitration Association Employment Arbitration Rules & Procedures, and be entitled to award relief that is similar to the relief available in court. A copy of the American Arbitration Association rules can be accessed online at https://www.adr.org/sites/default/files/Employment-Rules-Web.pdf and/or from the Company's Human Resources Department, by email at lbrashear@avenue5.com and bfillmore@avenue5.com and/or by certified mail to 901 Fifth Ave., Suite 3000, Seattle, Washington 98164.

Of course, there will be no retaliation against any employee who asks to review the American Arbitration Association Rules or who asks questions about this process. If you accept or continue employment with the Company after receiving this Agreement, you will have agreed to the terms of this Agreement even if you do not sign it.

Below is a list of Questions & Answers about the Agreement. If you have any other questions, please contact the Company's Human Resources Department at lbrashear@avenue5.com and bfillmore@avenue5.com.

Finally, please sign this memorandum below and return a copy to the Company, which will confirm that you received a copy of this memorandum, the list of Questions & Answers, and the Agreement itself, on the date set forth below.

### Acknowledgment

I received a copy of this memorandum, the list of Questions & Answers, and the Agreement.

_____          _____
Print Your Name Here             Sign Your Name Here

_____
Date

-1-

**Questions & Answers**

Date/Time : 7/7/2026 5:26:03 PM CDT

FILLMORE, BETSY M | Z00167 | 103 | AVENUE5 RESIDENTIAL, LLC | 00195

Technology by ExponentHR

Contact Us    •  Copyright Notice    •  Privacy Notice    •  Terms of Use

https://www.exponenthr.com/service/OnboardingEEDocuments.aspx

2/2

## ARBITRATION PROGRAM

Program Overview

Avenue5 is making updates to its long-standing arbitration program with employees,

Arbitration provides both parties with an expedient alternative to costly and time-consuming litigation in the rare case when disputes arise between the Company and its employees,. In arbitration, claims are heard by a neutral third-party called an arbitrator.  The parties are entitled to have their own attorneys represent them at the arbitration.  Some of the benefits of arbitration are that it is generally a faster way of resolving disputes and less expensive for both sides.  Arbitrations often provide a much greater level of privacy for both parties.  The Company will pay the arbitrator's fees and any administrative and/or filing fees pertaining to the arbitration, where required by law.  Otherwise, arbitration fees and costs will be split by the Parties equally.

Attached is a copy of Avenue5 Residential LLC's (the "Company") Mutual Arbitration Agreement ("Agreement").  All employees of the Company are asked to sign the Agreement.

It is important to note that by signing this Agreement, you are not giving up all of your rights as an employee, but only agreeing that both you and the Company will waive rights to have disputes heard by a judge or jury in the court system.  You also waive your right to file or participate in a class or collective action, and except as otherwise set forth in the Agreement, a representative action. However, you can still file claims against the Company individually in arbitration.

Under this Agreement, the arbitrator would follow the American Arbitration Association Employment Arbitration Rules & Procedures, and be entitled to award relief that is similar to the relief available in court.  A copy of the American Arbitration Association rules can be accessed online at https://www.adr.org/sites/default/files/Employment-Rules-Web.pdf and/or from the Company's Human Resources Department, by email at lbrashear@avenue5.com and bfillmore@avenue5.com and/or by certified mail to 901 Fifth Ave., Suite 3000, Seattle, Washington 98164.

Of course, there will be no retaliation against any employee who asks to review the American Arbitration Association Rules or who asks questions about this process.  If you accept or continue employment with the Company after receiving this Agreement, you will have agreed to the terms of this Agreement even if you do not sign it.

Below is a list of Questions & Answers about the Agreement.  If you have any other questions, please contact the Company's Human Resources Department at lbrashear@avenue5.com and bfillmore@avenue5.com.

Finally, please sign this memorandum below and return a copy to the Company, which will confirm that you received a copy of this memorandum, the list of Questions & Answers, and the Agreement itself, on the date set forth below.

Acknowledgment

I received a copy of this memorandum, the list of Questions & Answers, and the Agreement.

_____          _____
Print Your Name Here                                Sign Your Name Here


_____
Date

## Questions & Answers

**What is the attached document?**  It is a Mutual Arbitration Agreement (the "Agreement").

**What is arbitration?**  It is a legal process where the parties agree that any disputes between the parties that cannot be resolved informally must be resolved by a neutral third party called an arbitrator, instead of before a judge or jury in court. The parties are entitled to be represented by their own legal counsel at the arbitration.  After reviewing the evidence and considering the arguments of the parties, the arbitrator makes a written decision to resolve the dispute.  There will be no trial by a judge or jury, and no appeal of the arbitrator's decision, except as provided by law.

**Why is the Company using Mutual Arbitration Agreements?**  The Company believes that resolving disputes through mutual arbitration instead of civil litigation in court benefits both parties.  Arbitration is typically faster and less expensive than civil litigation in court for both parties.  In addition, it is important for the Company to maintain confidentiality with respect to its operations and arbitration is a confidential process.

**Who will run the arbitration?**  An arbitration company called American Arbitration Association, whose website is at https://www.adr.org/.  You can obtain the American Arbitration Association Rules from that website and/or from the Company's Human Resources Department, by email at lbrashear@avenue5.com and bfillmore@avenue5.comand/or by certified mail to 901 Fifth Ave., Suite 3000, Seattle, Washington 98164.  There will be no retaliation against you if request a copy of the American Arbitration Association Rules.

**Who pays the cost of arbitration?**  The Company will pay the arbitrator's fees and any other administrative fees unique to arbitration, where required by law.  Otherwise, arbitration fees and costs will be split by the Parties equally.

**Can I still receive a similar award in arbitration that I would receive in court action?**  An arbitrator is entitled to award relief that is similar to the relief available to you in court.

**What claims are not covered by the Agreement?**  The Agreement only covers claims that can be arbitrated under the law. For example, workers' compensation and unemployment claims are not subject to arbitration, so they are not covered by this Agreement.

**Who has been asked to sign the Agreement?**  All employees.

**Do I give up all of my rights to file claims against the Company under the arbitration process in the Agreement?**  No. You are not giving up your right to file claims, but only agreeing that both you and the Company will give up the right to have disputes heard by a judge and/or jury in court.  You also give up your right to file or participate in a class or collective action, and except as otherwise set forth in the Agreement, a representative action.  However, you can still file any individual claims against the Company in arbitration.

**What is the Addendum?**  The Addendum to the Agreement provides you with information about any threatened or pending wage and hour class, collective, or representative actions against the Company.  You may be, or may become, a member of the proposed class, collective, or representative action, and your rights in this action could be affected by signing this arbitration agreement or by any prior arbitration agreement between you and the Company.

**What if I have more questions?** You may contact the Human Resources Department by email at lbrashear@avenue5.com and bfillmore@avenue5.com.

## MUTUAL ARBITRATION AGREEMENT

Avenue5 Residential LLC and its parents, subsidiaries, affiliates, related companies, officers, directors, employees, agents, representatives, shareholders, successors and assigns (collectively the "Company" or "Employer") and the Employee whose name and signature appear below ("Employee", "You", "Your") (together, the "Parties") hereby enter into the following Mutual Arbitration Agreement ("Agreement") through which the Parties mutually agree:

1.      Arbitration Generally. The Parties agree to arbitrate all claims that may lawfully be arbitrated, including as set forth in Section 3 below, that the Parties may have against each other. In arbitration, each side in the dispute presents its case to a neutral third party called an arbitrator, rather than to a judge or jury in court. You and the Company are each entitled to be represented by Your/its own legal counsel in the arbitration. After reviewing the evidence and considering the arguments of the Parties, the arbitrator will issue a written decision. There will be no trial by a judge or jury, and no appeal of the arbitrator's decision, except in the limited circumstances allowed under the Federal Arbitration Act.

2.      Selection of Arbitrator.  The Parties agree any arbitration shall be conducted before one neutral arbitrator selected by the Parties under the American Arbitration Association Employment Arbitration Rules & Procedures (the "American Arbitration Association Rules") then in effect. You may obtain a copy of the American Arbitration Association Rules by accessing the American Arbitration Association website at https://www.adr.org/sites/default/files/Employment-Rules-Web.pdf or https://www.adr.org/ and/or by requesting a copy of the American Arbitration Association Rules from the Company's Human Resources Department, by email at lbrashear@avenue5.com and bfillmore@avenue5.comand/or by certified mail to 901 Fifth Ave., Suite 3000, Seattle, Washington 98164. The arbitrator's decision shall be final and binding.

3.      Claims Subject to Arbitration. The claims covered by this Agreement, and subject to arbitration, include all past, present, and future disputes and claims related to or arising out of or in connection with Your relationship and/or employment with, application for employment with, and/or termination of employment from the Company and/or a Beneficiary Party, except as set forth in Section 4 below ("Claims").  The Claims include but are not limited to: wrongful termination; discrimination; harassment; retaliation or whistleblower claims; breach of contract/covenant (including confidentiality agreements); violation of public policy or unfair competition; violation of non-compete clauses; violation of non-solicitation agreements; breach of fiduciary duty; theft, conversion, or misappropriation; violation of intellectual property rights, including trade secrets; emotional distress; fraud, misrepresentation, concealment, defamation, or any other tort or common law claims; privacy claims; all wage and hour claims, including but not limited to minimum wage, off the clock work, overtime, bonuses, commissions, meal/rest periods, sick pay, vacation, wage statements, reimbursement, penalties, benefits; violation of any federal, state, local or other government constitution, statute, ordinance or regulation arising out of, related to, or governing your employment relationship with the Company and/or a Beneficiary Party, such as (as amended) Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Older Worker Benefit Protection Act, the Americans With Disabilities Act, the Rehabilitation Act, the Fair Labor Standards Act, the Consolidated Omnibus Budget Reconciliation Act, the Family and Medical Leave Act, the Worker Adjustment and Retraining Notification Act, the Fair Credit Reporting Act, to the maximum extent permitted by controlling law.  These are examples of Claims.  The list is not exhaustive; all Claims are subject to this Agreement.  If a specific statute or cause of action is not specifically listed above, that does not exclude such Claim from coverage by the Agreement. If there is an allegation of joint employment or single integrated enterprise, this Agreement covers all such Claims, whether the alleged employment relationship was express or implied and whether direct with the Company or a Beneficiary Party (as defined below), or some other alleged joint employer or integrated enterprise, for whose benefit this Agreement is expressly made.

Additionally, the arbitrator, and not any federal, state, or local court, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this Agreement.  However, the preceding sentence shall not apply to the waivers of "Class, Collective, and/or Group Actions" (Section 8) and "Representative Actions" (Section 9) described below.  Regardless of anything else in this Agreement, and/or the AAA rules or procedures, any dispute relating to the interpretation, applicability, or enforceability of the waivers of Class, Collective, and/or Group Actions (Section 8) and Representative Actions (Section 9) in this Agreement may only be determined by a court and not an arbitrator.

4.      Types of Actions Not Subject to Arbitration.  This Agreement does not cover and the definition of  Claims does not include any claim or claims that cannot be arbitrated under applicable law, such as workers' compensation and unemployment compensation claims, claims under the Sarbanes-Oxley Act (to the extent applicable), claims for benefits

under the Employment Retirement Income Security Act (which must be resolved in accordance with the terms and procedures set forth in the applicable plan documents), and claims under the National Labor Relations Act.  This Agreement also expressly excludes claims for temporary, preliminary, or emergency injunctive relief to preserve the status quo prior to and/or in aid of arbitration.  Nothing in this Agreement shall be interpreted to mean that Employee is precluded from filing complaints with the California Civil Rights Department, the Equal Employment Opportunity Commission, the Securities and Exchange Commission, the Occupational Safety and Health Administration, the California Division of Occupational Health and Safety, and/or the National Labor Relations Board.

With respect to any claims for sexual harassment or sexual assault, as defined in 9 U.S.C. §§ 401-402 (Pub. L. No. 117-90, 136 Stat 26), as well as any claims related thereto, which accrue or arise after March 3, 2022 ("Excludable Claims"), You may elect to avoid enforcement of the Parties' agreement to arbitrate, and the class action waiver in this Agreement, as to those Excludable Claims.  However, if You file a lawsuit containing Excludable Claims, and other claims are also pled in that same lawsuit, then the Parties agree that the duty to arbitrate and the waivers described in this Agreement still govern all Claims that are not Excludable Claims, and You shall not be able to make an election to avoid obligations under this Agreement as to those Claims that are not Excludable Claims.  You must elect to avoid enforcement of arbitration and/or the class action waiver of Excludable Claims within 30 days after receiving a demand for arbitration of such claims from the Company in writing to the Company's Human Resources Department, by email at lbrashear@avenue5.com and bfillmore@avenue5.com and/or by certified mail to 901 Fifth Ave., Suite 3000, Seattle, Washington 98164.

5.      Initiating Arbitration. Either Party may initiate arbitration by making a written request to arbitrate to the other Party listing the Claim(s) to be arbitrated and by submitting a Demand for Arbitration directly with American Arbitration Association per instructions on American Arbitration Association's website. The Demand for Arbitration must be submitted to the American Arbitration Association within the statute of limitations under applicable state and/or federal law for the particular Claim(s) asserted.  Requests to the Company shall be delivered to the Company's Human Resources Department either by email and/or certified mail as set forth in Section 2 of this Agreement. Requests to You shall be delivered by certified mail or personal delivery to the last known mailing address You provided in writing to the Company.  The arbitration shall take place in the county where You were last employed by the Company and the substantive law of the State in which that county is located shall be the governing law, unless the Parties agree otherwise.

The Company will pay the arbitrator's fees and any other administrative fees unique to arbitration, where required by law.  In those circumstances, You will be responsible for paying the equivalent of court filing fees, and the Company will pay all other fees unique to arbitration.  For example, if the filing fee for a Complaint in court is $400, You would be required to pay up to $400 towards the initial filing fee for arbitration.  If applicable law does not require that the Company pay all fees and costs unique to arbitration, then arbitration fees and costs will be split by the Parties equally.  For other fees and costs that are an ordinary part of litigation, including but not limited to, discovery costs and attorneys' fees, the Parties will pay for their own fees and costs to the extent they would be required to do so in a court of law, subject to the ability of the arbitrator to award costs and fees as described in this Agreement.

6.      Arbitrator's Authority.  The arbitrator shall apply the applicable law to determine issues of liability and damages regarding all Claims to be arbitrated.  The arbitrator has the authority to order such discovery as they consider necessary to a full and fair exploration of the issues in dispute, consistent with the expedited and efficient nature of arbitration.  Subject to the limitations on class, collective, group, and representative actions described in Sections 9 and 10 below, the arbitrator is authorized to award any remedy or relief that would have been available to the Parties had the matter been heard in court. The arbitrator shall have the authority to provide for the award of attorneys' fees and costs to the prevailing Party to the extent such award is authorized by the applicable law.  This includes the power to award attorney's fees or costs for defending against a frivolous action to the extent permitted by the underlying substantive law.  The decision of the arbitrator shall be in writing and shall provide the reasons for the arbitrator's award.  No arbitration award or decision will have any preclusive effect on any third party claim or dispute.  This Agreement shall not be construed to deprive a Party of any substantive right preserved by law.

7.      Acceptance of Agreement.  Your employment and/or continued employment with the Company after your receipt of this Agreement shall be deemed acceptance of the terms of the Agreement.  By accepting or continuing employment with the Company after receiving this document, You agree to the terms of this Agreement even if you do not sign it.  Your continued employment with the Company also requires the Company to arbitrate Claims it would have against You.

-4-

8.    <u>Class, Collective, and/or Group Actions</u>.  The Parties agree that each may bring and pursue Claims against the other only in their individual capacities, and not on behalf of, with respect to, joined with, and/or as a part of, any class, collective, and/or group action, including any pending class, collective, and/or group actions identified in the attached addendum, except to the extent such waiver is not permitted by applicable law.  If any Party brings a Claim as a plaintiff or participates in, or seeks to participate as a member of or person to be covered by a class, collective, and/or group action, or challenges the enforceability of this Section (Section 8), the Parties agree that a court, not an arbitrator, shall determine which Claims are subject to the duty to arbitrate under this Agreement and whether any Claims must proceed on a class, collective, and/or group action basis.  If the court determines that any Claims must proceed on a class, collective, and/or group action basis, or that any Claims arising from alleged unlawful acts or violations of law not committed against or suffered by Employee personally can be pursued on behalf of anyone other than Employee, then those Claims, if allowed, may only proceed in court, not in arbitration.  If a court determines that pursuant to this Agreement Employee cannot pursue class, collective, and/or group Claims on behalf of anyone other than Employee, those Claims shall be dismissed by the court to the maximum extent required or permitted by law or, if dismissal is not permissible, such Claims shall be stayed pending the conclusion of arbitration of any arbitrable Claims.  Notwithstanding this provision, nothing in this Agreement should be interpreted as preventing the Company from voluntarily agreeing to settle a threatened dispute on a class, collective, and/or group basis subject to obtaining any legally required court approvals for any such settlement.

9.    <u>Representative Actions</u>.  The Parties agree that if Employee brings a Claim as a representative action, such as under the California Private Attorneys General Act ("PAGA"), including as it may be amended (or a similar type of private attorney general statute), then Employee may pursue Claims for relief as a representative of the state, but Employee may only seek remedies for alleged violations of law that Employee personally experienced, and to the extent civil penalties are available, Employee may only recover such civil penalties based on alleged violations of law personally suffered by Employee.  Such individual representative action Claims, including under PAGA, shall be arbitrated consistent with this Agreement.  Employee may not at any time seek relief or to adjudicate Claims based upon violations allegedly experienced by other employees, even if Employee asserts that they experienced the same type of alleged legal violation as the other employees.  The Parties further agree that no Party to this Agreement may participate as an "aggrieved employee" in a PAGA representative action and/or any other representative action filed by another employee.  If Employee brings PAGA Claims, or other representative action Claims based on violations allegedly experienced by other employees, such Claims shall be dismissed by the court to the maximum extent permitted by law or, if dismissal is not permissible, such Claims shall be stayed pending the conclusion of arbitration of the remaining arbitrable Claims.  If any Party brings a Claim as a plaintiff or participates or seeks to participate as a member of or person to be covered by a representative or PAGA action arising from alleged unlawful acts or violations of law not committed against or suffered by Employee personally, or seeks to bring or participate in a representative action involving employment Claims that is not brought under PAGA, or challenges the enforceability of this Section (Section 9), the Parties agree that a court, not an arbitrator, shall determine which Claims are subject to the duty to arbitrate under this Agreement.  If the court determines that any Claims must proceed on a representative basis, or that any Claims arising from alleged unlawful acts or violations of law not committed against or suffered by Employee personally can be pursued on behalf of anyone other than Employee, then those Claims may only proceed in court, not in arbitration.  Notwithstanding this provision, nothing in this Agreement should be interpreted as preventing the Company from voluntarily agreeing to settle a threatened dispute on a representative basis subject to obtaining any necessary court approvals for any such settlement.

10.    <u>Guarantee of Mandatory Protections.</u>  If a court determines that this Agreement is lacking any employee protections required by law, the Company may offer the employee protections the court and/or law deems necessary to preserve the enforceability of this Agreement.

11.    <u>Mass Arbitrations</u>.    A "Mass Arbitration" occurs when an attorney or coordinating group of attorneys asserts the same or overlapping Claims against the Company and/or a Beneficiary Party on behalf of twenty-five (25) or more individuals.  If fifty (50) or more individuals initiate arbitration against the Company and/or a Beneficiary Party (whether together or individually) within a one-year period in circumstances where the Company reasonably believes they qualify as a Mass Arbitration, then the Company shall have the right to stay all such arbitrations while it applies to a court of competent jurisdiction for a declaration that the arbitrations qualify as a Mass Arbitration.  During the period that this application is pending, all arbitrations subject to this Agreement shall be stayed and the Company and/or a Beneficiary Party shall not be required to pay any further fees (including initial filing fees) toward the arbitrations until the court issues a ruling on the application for a declaration of a Mass Arbitration.  If the Court agrees that the subject arbitrations meet the definition of a

Mass Arbitration set forth above, then the Company and/or a Beneficiary Party shall have the right to have all such arbitrations consolidated into a single multi-claimant arbitration before a single arbitrator, who shall be selected by the American Arbitration Association rules for selecting an arbitrator in an employment action, and the Company and/or a Beneficiary Party shall be required to pay only a single filing fee for the Mass Arbitration. To the extent additional related arbitrations that assert substantially overlapping Claims against the Company and/or a Beneficiary Party are then filed after the filing of an application with court for a declaration of a Mass Arbitration, the individuals bringing such actions shall be required to be added as additional claimants in the Mass Arbitration. As with any arbitration under this Agreement, in a Mass Arbitration, the arbitrator is not empowered to allow the action to proceed as a class, collective, group or representative action and each claimant's Claims must be determined individually, unless the parties stipulate otherwise in a signed writing.

12.    Beneficiaries. As used in this Agreement, the phrase "Beneficiary Parties" means and includes all of the following persons and entities, each of whom may be referred to individually in this Agreement as a "Beneficiary Party": Avenue5 California Inc., the Company's property owner clients, any temporary staffing agency, employment agency, co-employer, joint employer, integrated enterprise, or Professional Employer Organization and their respective parents, subsidiaries, affiliates, related companies, officers, directors, partners, principals, members, agents, employees, representatives, owners, investors, shareholders, joint venturers, joint employers, insurers, alter egos, fiduciaries, trustees, contractors, vendors, successors, successors, attorneys, or assigns.

13.    Severability. If any provision of this Agreement or part thereof is determined to be illegal or unenforceable, such determination shall not affect the balance of this Agreement, which shall remain in full force and effect, and such invalid provision or part thereof shall be deemed severable, provided that in all circumstances no provision of this Agreement may be severed if the effect would be to allow class or collective arbitration, or arbitration of Claims arising from alleged unlawful acts or violations of law not committed against or suffered by Employee personally.

14.    Miscellaneous. The Parties agree that the Company and any Beneficiary Party is engaged in transactions involving interstate commerce, and this Agreement shall be enforceable under the substantive and procedural provisions of the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq, and where applicable, N.H. Rev. Stat. Ann. § 542:1. This Agreement, once effective, supersedes any prior written and/or verbal agreements concerning arbitration of Claims between the Parties, but does not supersede any non-arbitration provisions (such as confidentiality or restrictive covenants) that may be contained in a consolidated document (e.g., a Confidential Information, Proprietary Rights, and Arbitration Agreement). If this Agreement is found to be not effective or enforceable for any reason, then any prior arbitration agreement between the Parties shall remain binding and enforceable. The Parties confirm that they have read the Memorandum and list of Question & Answers explaining the arbitration process and the attached Addendum Concerning Pending Actions.

**THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES. I ACKNOWLEDGE THAT I HAVE RECEIVED AND READ THIS AGREEMENT, UNDERSTAND ITS TERMS, AND HAVE VOLUNTARILY DECIDED TO ACCEPT THE TERMS OF THE AGREEMENT. I ACKNOWLEDGE THAT I HAVE RECEIVED AND READ OR HAVE HAD THE OPPORTUNITY TO READ THIS ARBITRATION AGREEMENT. I UNDERSTAND THAT THIS ARBITRATION AGREEMENT REQUIRES THAT DISPUTES THAT INVOLVE THE MATTERS SUBJECT TO THE AGREEMENT BE SUBMITTED TO ARBITRATION PURSUANT TO THE ARBITRATION AGREEMENT RATHER THAN TO A JUDGE AND JURY IN COURT. MY ACCEPTANCE OF WORK OR MY CONTINUING TO WORK FOR THE COMPANY WILL BE DEEMED ACCEPTANCE OF THE TERMS OF THIS AGREEMENT REGARDLESS OF WHETHER I SIGN BELOW. THIS AGREEMENT SHALL NOT BE CONSTRUED AS A COMMITMENT BY EITHER PARTY TO CONTINUE AN EMPLOYMENT RELATIONSHIP FOR ANY CERTAIN PERIOD OF TIME, NOR MODIFY IN ANY WAY THE AT-WILL STATUS OF EMPLOYMENT.**

_____

Sign Your Name Here

_____

Print Your Name Here

_____

Date of Employee's Signature

_____

Employer Signature

_____

Date of Employer Signature

-7-

## ADDENDUM

## NOTICE CONCERNING CURRENTLY PENDING OR THREATENED CLASS OR REPRESENTATIVE ACTIONS

The following are currently threatened or pending wage and hour class action or Private Attorneys General Act, Cal. Lab. Code §§ 2698 *et seq*. ("PAGA") lawsuits against the Company for which you may be a class or representative action member.  You may be, or may become, a member of the proposed class or representative actions identified below, and your rights in these threatened or pending actions will be affected by signing this arbitration agreement.  A copy of filed complaints in these actions are available for review upon written request to the Company's Human Resources Department, or from the court(s) in which the cases are pending.  A copy of any PAGA notices sent to the Company in the matters referenced below are available for review upon written request to the Company's Human Resources Department, or from the California Department of Industrial Relations.

*Carlos Ruano v. Avenue5 Residential LLC*
- Superior Court of California, Los Angeles County
- Case No. 22STCV39521
- Filed on: December 20, 2022
- In this action, Carlos Ruano, a former employee, has asserted class action claims alleging failure to: pay minimum and overtime wages; provide meal and rest breaks; provide accurate itemized wage statements; pay all wages due upon separation of employment; and to reimburse necessary business expenses.  Mr. Ruano also alleges violation of Business and Professions Code section 17200. On December 20, 2022, Mr. Ruano submitted a notice indicating that he intends to file a PAGA lawsuit, asserting representative action claims alleging that the Company violated various provisions of the California Labor Code.

*Nicole Martinez Larez v. Avenue5 Residential LLC*
- No action has been filed.  However, Nicole Martinez Larez, has threatened to file a class action lawsuit in the Superior Court of California, San Bernardino County, asserting claims alleging failure to: pay minimum and overtime wages; provide meal and rest breaks; provide accurate itemized wage statements; pay all wages timing during employment; and pay all wage due upon separation of employment.  Ms. Larez also alleges violation of Business and Professions Code section 17200.  On December 9, 2022, Ms. Larez submitted a notice indicating that she intends to file a PAGA lawsuit, asserting representative action claims alleging that the Company violated various provisions of the California Labor Code.

**↓ docusign**

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 778C0691-698B-8AB0-8382-9B7B419ED529 | | Status: Completed |
| Subject: Ave5 (Edgerton) | | |
| Client matter #: 59KJ-265090 | | |
| Source Envelope: | | |
| Document Pages: 17 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 4 | Initials: 0 | Monica Clemens |
| AutoNav: Enabled | | 350 South Grand Ave., 40th Floor |
| EnvelopeId Stamping: Disabled | | Los Angeles, CA  90071-3460 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | mclemens@sheppard.com |
| | | IP Address: 38.122.222.51 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Monica Clemens | Location: DocuSign |
| 7/28/2026 10:41:04 AM | mclemens@sheppard.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Betsy Fillmore<br>bfillmore@avenue5.com<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>*Betsy Fillmore*<br>163BAA22D2A74AF...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 209.202.232.46 | Sent: 7/28/2026 10:44:27 AM<br>Viewed: 7/28/2026 11:06:58 AM<br>Signed: 7/28/2026 11:07:08 AM |

**Electronic Record and Signature Disclosure:**
Accepted: 7/28/2026 11:06:58 AM
ID: 038985c2-c8e0-46b2-b824-e2ac52074410

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Gal Gressel<br>GGressel@sheppardmullin.com<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 7/28/2026 10:44:34 AM |

**Electronic Record and Signature Disclosure:**
Not Offered via Docusign

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 7/28/2026 10:44:34 AM |
| Certified Delivered | Security Checked | 7/28/2026 11:06:58 AM |
| Signing Complete | Security Checked | 7/28/2026 11:07:08 AM |
| Completed | Security Checked | 7/28/2026 11:07:08 AM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |
| **Electronic Record and Signature Disclosure** | | |

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, Sheppard, Mullin, Richter & Hampton LLP (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Sheppard, Mullin, Richter & Hampton LLP:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: DocuSignSupport@sheppard.com

**To advise Sheppard, Mullin, Richter & Hampton LLP of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at DocuSignSupport@sheppard.com and in the body of such request you must state:

your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Sheppard, Mullin, Richter & Hampton LLP**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to DocuSignSupport@sheppard.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Sheppard, Mullin, Richter & Hampton LLP**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to DocuSignSupport@sheppard.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Sheppard, Mullin, Richter & Hampton LLP as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Sheppard, Mullin, Richter & Hampton LLP during the course of your relationship with Sheppard, Mullin, Richter & Hampton LLP.