THE HONORABLE GRADY J. LEUPOLD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| ETHAN EDGERTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AVENUE5 RESIDENTIAL LLC, a Delaware foreign limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 2:26-cv-02650-GJL<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT AVENUE5 RESIDENTIAL LLC.'S MOTION TO COMPEL ARBITRATION, DISMISS OR STRIKE CLASS CLAIMS AND STAY ACTION PENDING ARBITRATION<br><br>NOTE ON MOTION CALENDAR:<br>AUGUST 28, 2026<br><br>ORAL ARGUMENT REQUESTED |



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

## TABLE OF CONTENTS


I. SUMMARY OF ARGUMENT ..... 7

II. LEGAL ARGUMENT ..... 7

A. Defendant Has Not Established That Plaintiff Assented to the Arbitration Agreement ..... 8

B. The Arbitration Agreement Is Procedurally Unconscionable. ..... 10

C. The Delegation Clause Is Substantively Unconscionable. ..... 12

1. The Double-Layered Asymmetry of Sections 8 and 9 Invalidates the Delegation Clause. ..... 13

2. Section 11 Gives the Company Unilateral Control Over Mass Arbitration. ..... 14

D. The Arbitration Agreement Is Independently Substantively Unconscionable. ..... 17

E. The Unconscionable Provisions Cannot Be Severed. ..... 19

F. Defendant's Request to Strike Class Allegations and Stay the Action Must Be Denied. ..... 20

III. CONCLUSION ..... 20




**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

## TABLE OF AUTHORITIES

**Cases**

*Achey v. Cellco Partnership*
475 N.J. Super. 446 (App. Div. 2023) .......... 15
*Adler v. Fred Lind Manor*
153 Wash.2d 331 (2004).......... 11, 17, 18
*Adolph v. Uber Techs., Inc.*
14 Cal. 5th 1104 (2023) .......... 20
*Angulo v. Providence Health & Servs. Wash.*
U.S. Dist. LEXIS 268911 (E.D. Wash. May 1, 2025).......... 20
*Berman v. Freedom Fin. Network, LLC*
30 F.4th 849 (9th Cir. 2022) .......... 9
*Bielski v. Coinbase, Inc.*
87 F.4th 1003 (9th Cir. 2023) .......... 14
*Burnett v. Pagliacci Pizza, Inc.*
196 Wn.2d 38 (2020) .......... 8, 10, 12
*Caremark, LLC v. Chickasaw Nation*
43 F.4th 1021 (9th Cir. 2022) .......... 12
*Cedar River Water & Sewer Dist. v. King Cnty.*
178 Wash.2d 763 (2013).......... 18
*Chabolla v. ClassPass Inc.*
129 F.4th 1147 (9th Cir. 2025) .......... 9
*Davis v. O'Melveny & Myers*
485 F.3d 1066 (9th Cir. 2007) .......... 18
*Fife Portal 140, LLC v. Subway Real Est., LLC*
2026 Wash. App. LEXIS (Wash. Ct. App. Apr. 7, 2026).......... 19
*First Options of Chicago, Inc. v. Kaplan*
514 U.S. 938 (1995).......... 8



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

*Galarsa v. Dolgen Cal., LLC*
88 Cal. App. 5th 639 (2023). .................................................................................................. 20

*Gandee v. LDS Family Servs.*
176 Wn.2d 569 (2013) ........................................................................................................... 18

*Goudarzi v. J.P. Morgan Chase Bank N.A.*
2025 U.S. Dist. LEXIS 135808 (W.D. Wash. July 16, 2025). ............................................... 8, 10

*Granite Rock Co. v. Int'l Bhd. of Teamsters*
561 U.S. 278 (2010)................................................................................................................. 8

*Gustin v. Club Demonstration Services, Inc.*
U.S. Dist. LEXIS 148507 (E.D. Cal. July 6, 2026) ............................................................... 16

*Heckman v. Live Nation Entertainment, Inc.*
120 F.4th 670 (9th Cir. 2024) ............................................................................... 14, 15, 16

*Holley-Gallegly v. TA Operating, LLC*
74 F.4th 997 (9th Cir. 2023) ................................................................................................ 14

*Iskanian v. CLS Transp. Los Angeles, LLC*
59 Cal. 4th 348 (2014) ........................................................................................................... 20

*Keystone Land & Dev. v. Xerox Corp.*
152 Wash. 2d 171 (2004)....................................................................................................... 19

*Kruger v. Horton*
106 Wash.2d 738 (1986)........................................................................................................ 18

*Kummetz v. Tech Mold, Inc.*
152 F.3d 1153 (9th Cir. 1998) ............................................................................................... 10

*Lim v. TForce Logistics, LLC*
8 F.4th 992 (9th Cir. 2021) .................................................................................................... 12

*MacClelland v. Cellco Partnership*
609 F. Supp. 3d 1024 (N.D. Cal. 2022) ................................................................................. 15

*McKee v. AT&T Corp.*
164 Wash.2d 372 (2008)................................................................................................. 18, 19



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

*Momot v. Mastro*,
652 F.3d 982 (9th Cir. 2011) ........................................................................................ 7

*Nelson v. Cyprus Bagdad Copper Corp.*
119 F.3d 756 (9th Cir. 1997) ...................................................................................... 10

*Nelson v. McGoldrick*
127 Wn.2d 124 (Wash. 1995) ..................................................................................... 10

*P.E. Sys., LLC v. CPI Corp.*
176 Wash. 2d 198 (2012) ............................................................................................ 19

*Pandolfi v. AviaGames, Inc.*
2024 U.S. Dist. LEXIS 159007 (N.D. Cal. Sept. 4, 2024) .......................................... 16

*Pokorny v. Quixtar, Inc.*
601 F.3d 987 (9th Cir. 2010). ...................................................................................... 19

*Rent-A-Ctr., W., Inc. v. Jackson*
561 U.S. 63 (2010) ........................................................................................... 7, 10, 12

*Sakkab v. Luxottica Retail N. Am., Inc.*,
803 F.3d 425 (9th Cir. 2015) ........................................................................................ 7

*Tadych v. Noble Ridge Construction, Inc.*
200 Wash. 2d 635 (2022) ............................................................................................ 17

*Valve Corp. v. Abbruzzese*
2026 U.S. Dist. LEXIS 117121 (W.D. Wash. May 27, 2026) ....................................... 16

*Viking River Cruises, Inc. v. Moriana*
596 U.S. 639 (2022) ..................................................................................................... 20

*Walters v. A.A.A. Waterproofing, Inc.*
151 Wn. App. 316 (2009) ............................................................................................ 17

*Williams v. DDR Media, LLC*
U.S. Dist. LEXIS 33319 (N.D. Cal. Feb. 28, 2023). ...................................................... 9

*Yakima Cnty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*
122 Wn.2d 371 (1993) .................................................................................................. 8



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

*Zuver v. Airtouch Communications, Inc.*
153 Wn.2d 293 (2004) ............................................................................................................ 13

**Statutes**

9 U.S.C. § 2........................................................................................................................ 7
9 U.S.C. § 4......................................................................................................................... 21
Wash. Const. art. I, § 10..................................................................................................... 18



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

Plaintiff Ethan Edgerton ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully opposes Defendant Avenue5 Residential LLC's ("Defendant") Motion to Compel Arbitration, Dismiss or Strike Class Claims and Stay Action ("MTCA").

## I. SUMMARY OF ARGUMENT

***First***, Defendant has not established that Plaintiff electronically assented to the Mutual Arbitration Agreement ("MAA" or "Agreement");[1] it proved, at most, that Plaintiff clicked a standalone acknowledgement. ***Second,*** the record shows that even if an agreement to arbitrate was formed, Plaintiff was denied meaningful choice, rendering the MAA, including the delegation clause, procedurally unconscionable. ***Third***, the delegation clause is substantively unconscionable. It operates alongside an employer-controlled mass arbitration mechanism that gives Defendant unilateral power to stay proceedings, suspend and reduce fees, and seek judicial declarations. These one-sided mechanisms delay and chill employee claims. Thus, this Court, not the arbitrator, must determine enforceability. ***Fourth***, independent of the delegation clause, the MAA is substantively unconscionable because its interlocking provisions are excessively one-sided and harsh, restricting Plaintiff's ability to pursue claims while preserving asymmetrical advantages for Defendant. ***Fifth***, and finally, because unconscionability taints the entire agreement, the MAA must be stricken in its entirety and the Court should deny Defendant's request to compel arbitration.

## II. LEGAL ARGUMENT

Under the Federal Arbitration Act, an agreement to arbitrate is enforceable unless invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." 9 U.S.C. § 2; *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 432 (9th Cir. 2015). Courts "should not assume that the parties agreed to arbitrate arbitrability" absent clear and unmistakable evidence. *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010).

[1] When cited herein, the at-issue Mutual Arbitration Agreement ("MAA" or "Agreement") refers to the denoted eight-page document (including Arbitration Program, Q&As, and Mutual Arbitration Agreement, and Addendum), attached at Exhibit "A" to Defendant's Declaration of Betsy Fillmore ISO MTCA ("Fillmore Decl.") ¶ 12 [D.E. 8-2], previously filed by Defendant. For reasons described herein, Plaintiff excludes the initial two pages (1/2 and 2/2) of Exhibit A as extraneous to the MAA.



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

**A. Defendant Has Not Established That Plaintiff Assented to the Arbitration Agreement.**

Arbitration is "a matter of contract between the parties; it is a way to resolve those disputes - but only those disputes - that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 278, 299-300 (2010). Thus, Plaintiff cannot be required to arbitrate any dispute he did not agree to submit. Agreement formation is a non-delegable gateway issue reserved for judicial determination. Washington law requires mutual assent for the formation of a valid contract. *Yakima Cnty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 388 (1993). The Court looks to the parties' "outward manifestations and circumstances surrounding the transaction" to determine mutual assent. *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 50 (2020). That said, even if an offeree shows objective manifestations of assent, they are not bound by "inconspicuous" and non-obvious contractual provisions of which they were unaware. *Goudarzi v. J.P. Morgan Chase Bank N.A.*, No. C24-1882-KKE, 2025 U.S. Dist. LEXIS 135808, at *15 (W.D. Wash. July 16, 2025).

Contract formation requires mutual assent, which is absent here. Plaintiff did not knowingly waive his right to a judicial forum by clicking through a litany of onboarding documents. Defendant produces no wet or electronic signature on the MAA – only an automated timestamp on a separate onboarding Acknowledgment printout that reads: "Acknowledged on 12/06/2024 11:19:14 AM by E. Edgerton." Exhibit A to Fillmore Decl. [D.E. 8-2, p. 8]. But there is no evidence that Plaintiff was actually presented with the text of the Program Overview, Q&As, and MAA during his onboarding process. Defendant established only two things: i) there is an Acknowledgment bearing a date/time stamp attributed to E. Edgerton; and ii) Ms. Fillmore can access online screenshots portraying some of the MAA. The relationship between the Acknowledgment and the MAA is disjointed because Defendant fails to produce the display screen interface needed to link them. *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d at 49 (finding no mutual assent where handbook acknowledgment failed to establish an agreement to arbitrate). According to Defendant, Plaintiff had to click an "Acknowledge & Complete Task" button to agree to arbitrate. Fillmore Decl. ¶ 11. Yet nothing in Exhibit A depicts any



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

such button; leaving Defendant unable to prove what, if anything, was actually presented to Plaintiff.

Even more, the standalone Acknowledgement bears none of the hallmarks of a conspicuous notice of the terms by which Plaintiff will be bound. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-857 (9th Cir. 2022) ("Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory on if [,*inter alia*,] the website provides reasonably conspicuous notice of the terms to which the consumer will be bound…") In the world of internet contracts, there are browsewrap, clickwrap, scrollwrap, and sign-in wrap agreements, each of which purport to bind users through different assent mechanisms. *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025). By requiring a user to click an "I agree" box, the website makes it crystal clear to that user that he or she is agreeing to something. Here, however, Defendant's assent mechanism does not require Plaintiff to click an "I agree" button, but rather an "Acknowledge" button in order to accept the MAA. Fillmore Decl. ¶ 11; Exhibit A, Acknowledgement, p. 1/2.

*Williams v. DDR Media, LLC* is instructive. *Williams v. DDR Media, LLC*, No. 22-cv-03789-SI, 2023 U.S. Dist. LEXIS 33319, at *7 (N.D. Cal. Feb. 28, 2023). There, the California district court refused to enforce an arbitration agreement where the "paragraph begins by stating 'By clicking the "Get Started" button, I am agreeing to,' followed by a long list of items before reaching the sentence 'In addition, I agree to the Terms of Use…'"*Id.* at **12-13. Here too, the Acknowledgment repeats that: "This is to ***acknowledge***" and "I ***acknowledge***" and "By submitting this ***acknowledgment***" and "By clicking on the '***Acknowledge***' button…," and is replete with a litany of items before adding in "I have voluntarily decided to accept" and "I agree." Exhibit A, Acknowledgment, p. 1/2. [emphasis added]. Defendant chose this elusive mechanism notwithstanding that courts often "doubt[] whether most consumers know that clicking that 'some other button' constitutes agreeing to contract terms." *Berman*, 30 F.4th at 866. Like "in *Berman*, where the notice was not sufficient, there was superfluous items separating the relevant action items from the notice." *Chabolla*, 129 F.4th at 1157. The explanation of the legal significance of an action must truly be unambiguous. Defendant cannot meet



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

its burden of showing either conspicuous notice or that Plaintiff was agreeing to the same thing.

Finally, waiver of a judicial forum via an arbitration provision "must be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question." *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 761-762 (9th Cir. 1997). But here, Defendant fails to evidence Plaintiff's mutual assent via a knowing waiver of the judicial forum in exchange for definite arbitral terms. *Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153, 1156 (9th Cir. 1998) (where employer did not explicitly present the arbitration agreement to the new employee, and the employee did not explicitly accept the agreement, employee did not knowingly enter into an agreement to arbitrate; that is, no arbitration agreement was formed). Further, performing job duties cannot substitute for required consent to arbitrate. *Burnett*, 196 Wn.2d at 51-52, fn.3 (citing *Nelson* and rejecting the premise that an employee is bound by continuing to perform work for the employer). In sum, absent evidence of explicit presentation and mutual assent, no contract was formed and Plaintiff cannot be compelled to arbitrate.

**B. The Arbitration Agreement Is Procedurally Unconscionable.**

Under Washington law, a finding of either procedural or substantive unconscionability suffices to void an agreement. *Burnett*, 196 Wn.2d at 54; *Goudarzi*, 2025 U.S. Dist. LEXIS 135808, at **22-23. Moreover, a delegation clause is considered a separate agreement from the arbitration provision in which it sits; thus, the Court, not the arbitrator, must undergo a separate (but related) analysis as to its validity. *Rent-A-Ctr.*, 561 U.S. 63, 71.

An agreement is procedurally unconscionable if a party lacked a meaningful choice, considering: (1) how the contract was entered, (2) opportunity to understand terms, and (3) whether key terms were hidden in fine print. *Burnett*, 196 Wash. 2d at 54-55. Courts do not apply these factors "mechanically without regard to whether in truth a meaningful choice existed." *Nelson v. McGoldrick*, 127 Wn.2d 124, 131 (Wash. 1995); *Goudarzi*, 2025 U.S. Dist. LEXIS 135808, at *23. Assuming formation, the MAA is procedurally unconscionable because of the circumstances of its formation and Plaintiff's lack of meaningful choice.



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

The MAA at issue here is a contract of adhesion.[2] Defendant drafted and presented it to Plaintiff as a pre-printed form agreement. All employees are asked to sign it. Exhibit A ("Q&A Who has been asked to sign the Agreement? All employees.") The MAA was presented to Plaintiff on a "take-it-or-leave-it" basis; that is, Plaintiff understood that completing the mandatory onboarding documents, presumably including the MAA, was a condition of his employment. *See,* Declaration of Ethan Edgerton ("Edgerton Decl.") ¶¶ 5-6, 10, 13, filed concurrently herewith. Plaintiff had no bargaining power, nor was there any meaningful choice. Defendant admits that the MAA was a condition of employment and Plaintiff's choices were: "acknowledge" or "exit." Fillmore Decl. ¶¶ 6-7, 9-11. Although Defendant contends Plaintiff had time to review it, Plaintiff was pressured to sign promptly before beginning work. Edgerton Decl. ¶¶ 5-7 (testifying that his manager required that the documents be completed same day, but that Plaintiff was simultaneously job shadowing, handling work responsibilities, and assisting with leases at the front desk). Further, the MAA was presented among approximately 10 onboarding documents, including a Confidential Information and Non-Solicitation Agreement ("NDA"), that Plaintiff was required to sign in order to work. Edgerton Decl. ¶¶ 8-9 (testifying to approx. 10 separate onboarding documents rushed through on an online portal in under nine minutes); *see also,* Declaration of Theodore Braun ("Braun Decl.") ¶¶ 3-4 and Exhibits "1" and "2," filed concurrently herewith. Moreover, the MAA itself is eight pages long, with fourteen numbered paragraphs, and is substantively complex, filled with statutory references and legal jargon. Plaintiff is a layperson who has no legal training. Edgerton Decl. ¶¶ 3, 11-12. A copy of the AAA arbitration rules was neither attached, nor otherwise provided. Edgerton Decl. ¶ 13.

Additionally, the delegation clause itself is procedurally unconscionable. Defendant drafted its arbitration policy and the clause delegating arbitrability unilaterally and offered it to Plaintiff on a take-it-or-leave-it basis. Further, the delegation clause involves an unfair element of surprise. It is buried in Section 3 of 14, is unnumbered and untitled, and contains nothing in the text to alert employees to its presence. Exhibit A, ¶ 3. Taken together, the adhesive nature of the MAA, the

[2] An adhesive contract is one that is (1) a standard form contract; (2) created by one party and given to another on a 'take it or leave it' basis; and (3) lacking equality of bargaining power between the parties. *Adler v. Fred Lind Manor*, 153 Wash.2d 331, 347 (2004).



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

coercive onboarding process, the document's legal complexity, and the buried delegation clause demonstrate that Plaintiff lacked a meaningful choice, rendering the Agreement and delegation clause procedurally unconscionable.

**C. The Delegation Clause Is Substantively Unconscionable.**

Except for the Section 8 and Section 9 waivers, the MAA delegates to the arbitrator "any dispute relating to the interpretation, applicability, or enforceability of the Agreement." Exhibit A, ¶ 3 (hereafter, "Delegation Clause"). But even when a contract delegates arbitrability to the arbitrator, courts must still ask "whether the agreement to delegate arbitrability…is itself unconscionable." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021). Substantive unconscionability exists where a contractual provision is one-sided or overly harsh. *Burnett*, 196 Wash.2d at 57. A delegation clause is nothing more than a specific kind of arbitration clause – it's an agreement to arbitrate disputes about arbitrability. *Rent-A-Ctr.*, 561 U.S. at 70. As with any other arbitration clause, therefore, before enforcing a delegation clause, a court must be "satisfied" that (1) the parties "agreed" to arbitrate, and (2) the delegation clause is enforceable and "validly commit[s]" the parties' gateway dispute to the arbitrator. *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029-1030 (9th Cir. 2022). Here, the delegation clause in the MAA is substantively unconscionable because it operates within a deeply asymmetrical architecture that gives Defendant unilateral control over threshold enforceability determinations.

On its face, the delegation clause creates an asymmetrical scheme by carving out Sections 8 and 9 and reserving all threshold challenges to class, collective, group, and representative waivers exclusively for a court. Exhibit A (carving out Section 8 and Section 9 from the delegation clause). Defendant preserves judicial access to protect itself against potential aggregate liability exposure, while confining employee-side gateway challenges to arbitration. But even more egregious, Section 11 corrupts the delegation clause by giving Defendant *unilateral* power to stay proceedings (***without tolling protection***), suspend fees, and consolidate claims, thereby delaying gateway determinations and chilling employee rights. Because any accumulation of individual arbitrations is the direct result



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

of the class waiver Defendant drafted, Defendant cannot leverage that predictable volume to justify its procedural veto. Together, these interlocking Sections 8, 9, and 11 transform the delegation clause into an unconscionable device that lets Defendant dictate the timing, forum, and economics of gateway enforceability.

**1. The Double-Layered Asymmetry of Sections 8 and 9 Invalidates the Delegation Clause.**

Washington law assesses whether a provision operates in a one-sided and harsh manner, rather than requiring identical obligations. *Zuver v. Airtouch Communications, Inc.*, 153 Wn.2d 293, 317-319 (2004). A provision is unconscionable where its practical effect gives one party a significant legal advantage unavailable to the other. *Ibid*. That is the problem here.

The delegation itself is asymmetrical because it reserves the courthouse to adjudicate those terms that might otherwise expose Defendant to class, collective, group, and representative actions, while forcing other gateway issues apt to be brought by employees into arbitration. Exhibit A ¶ 3 (carving out "any dispute relating to the interpretation, applicability, or enforceability of the waivers of Class, Collective, and/or Group Action (Section 8) and Representative Action (Section 9) in this Agreement may only be determined by a court and not an arbitrator.") That is the first layer of asymmetry. But Sections 8 and 9 reveal yet another employer-advantaged proviso, to wit: "Notwithstanding this provision, nothing in this Agreement should be interpreted as preventing ***the Company*** from voluntarily agreeing to settle a threatened dispute on a class, collective and/or group [or, representative] basis subject to obtaining any legally required court approvals for any such settlement." Exhibit A, ¶¶ 8, 9. [emphasis added] The provision thus does more than establish a neutral waiver of collective procedures, it contractually preserves for "the Company" an option that the employee was required to surrender. The Agreement could have provided that "the Parties" may voluntarily agree to such a resolution, but instead it singles out "the Company." This sentence is evidence of a broader allocation of advantages to the employer over those of the employee: while the employee is restricted to individual dispute resolution, the Company retains various 'exit ramp'



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

departures from that restriction when it serves its interests. This asymmetrical and non-mutual pattern is reinforced when Section 11 and its effects are considered.

**2. Section 11 Gives the Company Unilateral Control Over Mass Arbitration.**

The Court may look beyond the delegation clause to assess its unconscionability. Under *Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023), *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997 (9th Cir. 2023), and *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), this Court is not confined to the isolated sentence delegating authority; it may examine surrounding provisions to evaluate whether delegating arbitrability is fundamentally unfair. Section 11's "Mass Arbitrations" mechanism creates this fundamentally unfair architecture by granting Avenue5 exclusive control to stay arbitrations, evade fee liabilities, and dictate the structure and timing of gateway determinations.

**Unilateral Overbroad Trigger**: Section 11 gives Defendant unilateral control over whether employees' individual arbitrations become subject to a fundamentally different single multi-claimant consolidated procedure. But this "Mass Arbitration" definition contains no geographic limitation and permits claims against the "Company" and/or an extraordinarily broad universe of "Beneficiary Parties" to be aggregated. Exhibit A, ¶¶ 1, 11, and 12. It further sweeps in individuals who file "whether together or individually" within a one-year period. Thus, claims arising in different states, against different "Company" and/or "Beneficiary Party" entities, or involving different circumstances may potentially be aggregated. For example, Plaintiff's wage claim could be swept into a Mass Arbitration proceeding alongside claims brought by employees of entirely separate third-party property owner or owners. Sweeping in over 250 unaffiliated entities and their workforces grants hundreds of non-signatories enforceable arbitration rights without any reciprocal duties.[3] As the Ninth Circuit recognized, switching from bilateral to aggregate arbitration fundamentally changes the

[3] Among the litany of covered "Beneficiaries" is, for example, "the Company's property owner clients." Exhibit A, ¶ 12. Defendant's own website confirms the scale of "Company's property owner clients" representing that "[B]ased in Seattle, we're a trusted partner to ***over 250 multifamily property owners*** nationwide." Braun Decl. ¶ 5 and Exhibit 3 (Avenue5 "Hire Us" Webpage Printout, Aug. 13, 2026 at p. 1). [emphasis added] That creates at least 250 unnamed third-party beneficiaries who gain arbitration rights without assuming reciprocal duties.



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

proceeding, sacrificing arbitration's informality, and creating a slower and more procedurally complex process. *Heckman*, 120 F.4th at 690 (affirming the delegation clause's unconscionability and explaining that aggregation sacrifices arbitration's informality and increases procedural complexity and delay).

**Automatic Stay**: Section 11 gives Defendant the unilateral right to stay arbitrations while it seeks a judicial declaration regarding the mass arbitration mechanism. Defendant can thus freeze proceedings and trap employees in procedural limbo. Worse, Section 11 contains no provision tolling applicable statutes of limitations during this stay. This prejudice is concrete, not speculative. Under RCW 7.04A.090(3), arbitrated claims share the same limitation periods. In *MacClelland v. Cellco Partnership*, the court found a mass arbitration procedurally unconscionable where prolonged delays without a tolling provision risked time-barring claims. *MacClelland v. Cellco Partnership*, 609 F. Supp. 3d 1024, 1042 (N.D. Cal. 2022); *Achey v. Cellco Partnership*, 475 N.J. Super. 446, 459 (App. Div. 2023) (following *MacClelland* and finding mass arbitration provision unconscionable where delayed claims were subject to limitations periods and the agreement contained no tolling provision). Section 11 presents the same defect, with an additional one-sided feature: ***Avenue5 itself has the contractual power to trigger the delay that creates the forfeiture risk***. Thus, the MAA forces employees into procedural limbo wherein employees are unable to proceed in court or arbitration, and without protection against limitations-period prejudice. By freezing gateway proceedings while the statutory clock ticks, this mechanism infects the delegation clause. Such one-sided allocation of control and risk renders Section 11 and the delegation clause substantively unconscionable.

**Suspension of Fee Obligations and One-Sided Reduction**: During the stay and while the court determination is pending, the Company is permitted to suspend its payment of arbitration fees, including initial administrative and filing fees. If consolidation occurs, Defendant's fee obligation is reduced to a single fee for the entire Mass Arbitration. Exhibit A, ¶ 11. Defendant thus obtains precisely the economic relief that its own individual-arbitration agreement would otherwise require it to bear. As *Gustin* recognized, the costs and logistical burdens created by mass arbitration are the



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

employer's problem, not the employees,' and a procedure designed to control those costs at employees' expense is inherently one-sided. *Gustin v. Club Demonstration Services, Inc.*, No. 1:25-cv-00579, 2026 U.S. Dist. LEXIS 148507 at ** 31-32 (E.D. Cal. July 6, 2026). This demonstrates the economic benefit Defendant receives from Section 11's asymmetrical mechanism.

**Mandatory Loss of Procedural Autonomy**: If a Mass Arbitration is established, later-filed individuals with substantially overlapping claims are required to become additional claimants in the existing proceeding, eliminating their choice to have their claims proceed independently. Conversely, an employee whose individual arbitration is already underway could see that proceeding displaced by a new, consolidated proceeding before a single arbitrator. In both contexts, employees are forced to enter a preexisting proceeding and to cede control of the pace, sequencing, and manner of adjudication to a structure they did not choose. As *Heckman* recognized, a switch from bilateral to aggregate arbitration "sacrifices the principal advantage of arbitration – its informality – and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Heckman*, 120 F.4th at 690. Even when people agree to aggregate claims or arbitrate by class, they are not agreeing to "arbitration as envisioned by the FAA." *Id.*; *Gustin*, 2026 U.S. Dist. LEXIS 148507 at *32 (finding a bellwether procedure unconscionable where employees were forced to cede control over the pace of adjudication to other claimants, arbitrators, and the employer); *Pandolfi v. AviaGames, Inc.*, No. 23-CV-05971-EMC, 2024 U.S. Dist. LEXIS 159007, at *19-22, 31-32 (N.D. Cal. Sept. 4, 2024) (finding mass arbitration scheme unconscionable due to structural delay). Extending Defendant's asymmetric control over consolidation to gateway disputes taints the delegation clause itself.

Avenue5 cannot justify Section 11 based on a mass arbitration risk of its own making; having mandated individual arbitration, it cannot convert the predictable accumulation of claims into a basis for oppressive procedural escape hatches. *Valve Corp. v. Abbruzzese*, No. 2:24-cv-01717-JNW, 2026 U.S. Dist. LEXIS 117121, at *39 (W.D. Wash. May 27, 2026) (rejecting employer's attempt to manipulate forum choices, explaining that a rule permitting the drafter to shift between court and arbitration "is not mutual consent - it is the drafter's prerogative dressed up as agreement"). Under



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

Washington (*e.g.*, *Zuver* and *Adler*) and Ninth Circuit precedent (*e.g.*, *Heckman* and *Pandolfi*), requiring employees to entrust gateway arbitrability to an arbitrator while Defendant retains a unilateral switch - via untolled stays, suspended fees, and forced consolidation - to delay and dictate gateway proceedings taints the delegation clause itself. Because this one-sided architecture invalidates the delegation, this Court must decide the MAA's enforceability.

**D. The Arbitration Agreement Is Independently Substantively Unconscionable.**

Substantive unconscionability asks whether a term is so "one-sided or overly harsh" that it should not be enforced. *Adler,* 153 Wash.2d at 344. "Coupled with the substantive components is an assessment of the term's unconscionability where [courts] consider the unfairness of the contract term or result." *Tadych v. Noble Ridge Construction, Inc.*, 200 Wash. 2d 635, 640 (2022). Drawing the two together, the Washington Supreme Court has held a term unconscionable where it "eliminates otherwise established statutory rights and is one sided, benefiting the contract drafter…is not negotiated or bargained for, and provides no benefit to the affected party." *Id*. at 644. All marks are met here. In addition to the clauses on delegation, mass arbitrations, and related terms addressed above, the MAA contains *three* additional substantively unconscionable terms.

**Bilateral Fee-Shifting vs. One-Way Statutory Right**: Section 6 of the MAA reads: "The arbitrator shall have the authority to provide for the award of attorneys' fees and costs to the prevailing Party to the extent such is authorized by the applicable law. This includes the power to award attorney's fees or costs for defending against a frivolous action to the extent permitted by the underlying substantive law." Exhibit A ¶ 6. But Section 6 conflicts with Washington's wage statute (RCW 49.48.030) and minimum wage/overtime (RCW 49.46.090) which establish a ***one-way statutory fee-shifting favoring employees.*** The Legislature designed these statutes to protect employees: a prevailing employee must be awarded attorney's fees, but a prevailing employer cannot recover fees from the employee. The Washington Supreme Court and Court of Appeals held that altering a statutory one-way fee scheme in an adhesion contract to allow bilateral fee recovery against an employee is substantively unconscionable as a matter of law. *Adler*, 153 Wn.2d at 354-355; *Walters*



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

*v. A.A.A. Waterproofing, Inc.*, 151 Wn. App. 316, 324-325 (2009). Further, Defendant cannot salvage Paragraph 6 through its boilerplate savings clause ("to the extent permitted by underlying substantive law") because the threat alone deters workers from filing claims. *Adler*, 153 Wn.2d at 355; *Gandee v. LDS Family Servs.*, 176 Wn.2d 569, 578, 581 (2013) ("To allow drafters to insert unconscionable terms and then fall back on a severability or savings clause would encourage drafters to offer unconscionable contracts, knowing that if challenged, the court will simply excise the term, but if unchallenged, the term will deter legitimate claims.") Threatening an hourly employee with potential liability for Avenue5's attorney fees impermissibly chills the assertion of statutory rights.

**Confidentiality**: The Q&A on page 2, incorporated via MAA Section 14, reads: "**Why is the Company using Mutual Arbitration Agreements?**...[I]n addition, it is important for the Company to maintain confidentiality with respect to its operations and arbitration is a confidential process." Exhibit A p. 2, ¶ 14. This confidentiality proviso, read in tandem with the simultaneously executed Confidential Information and Non-Solicitation Agreement ("NDA"),[4] violates Washington statutory law, the Washington Constitution, and is substantively unconscionable.

First, Washington's "Silenced No More Act" voids an employment confidentiality clause that restricts discussion of illegal conduct, including wage violations, harassment, and retaliation. RCW 49.44.211(1). Relying on the MAA and NDA, Defendant sought to bind Plaintiff more than two years after the statute's June 9, 2022 effective date, in direct violation of state law. Second, the Washington Constitution mandates that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." Wash. Const. art. I, § 10. Lastly, the Washington Supreme Court interpreted this mandate to render confidentiality provisions in employments agreements substantively unconscionable because secrecy "hampers plaintiffs in learning about potentially meritorious claims and serves no purpose other than to tilt the scales in favor of [the drafting party.]" *McKee v. AT&T Corp.*, 164 Wash.2d 372, 398 (2008). *See also, Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1078-

[4] Under Washington law, written instruments contemporaneously executed as part of the same employment onboarding transaction must be read and construed together as a single transaction. *Cedar River Water & Sewer Dist. v. King Cnty.*, 178 Wash.2d 763, 784-785 (2013); *Kruger v. Horton*, 106 Wash.2d 738, 742 (1986).



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

1079 (9th Cir. 2007) (holding unconscionable confidentiality terms that stifle discovery and chill statutory rights); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1002 (9th Cir. 2010). Here, the MAA and NDA provisions impermissibly stifle discovery, prevent employees from learning about similar misconduct, and undermine statutory rights. Thus, this one-sided scheme is unconscionable.

**Express Reservation to Draft Unlawfully.** Section 10 declares that "If a court determines that this Agreement is lacking any employee protections required by law, the Company may offer the employee protections the court and/or law deems necessary to preserve the enforceability of this Agreement." Exhibit A, ¶ 10. Section 10 renders material terms indefinite by reserving for only the Defendant a post-hoc option to cure illegal omissions if challenged. Under Washington law, agreements to agree are unenforceable because they represent "an agreement to do something which requires a further meeting of the minds of the parties and without which it would not be complete." *Fife Portal 140, LLC v. Subway Real Est., LLC,* No. 60044-7-II, 2026 Wash. App. LEXIS 738, at *13-14 (Wash. Ct. App. Apr. 7, 2026) (unpublished) (quoting *Keystone Land & Dev. v. Xerox Corp.*, 152 Wash. 2d 171 at 175-176 (2004)). *See also, P.E. Sys., LLC v. CPI Corp.*, 176 Wash. 2d 198, 208 (2012). Courts reject such deferred arrangements to "avoid trapping parties in surprise contractual obligations." *Fife Portal 140, LLC,* 2026 Wash. App. LEXIS 738, at *14. Defendant cannot salvage an unlawful agreement by reserving a unilateral right to rewrite essential terms mid-litigation.

**E. The Unconscionable Provisions Cannot Be Severed.**

When unconscionable terms permeate an arbitration agreement, the whole contract should be stricken. *McKee,* 164 Wash.2d at 403 ("Permitting severability...in the face of a contract that is permeated with unconscionability only encourages those who draft contracts of adhesion to overreach.") Here, the MAA – which is undeniably a contract of adhesion – is permeated with unconscionable terms that operate together, not in isolation. Severance would leave Defendant with the benefits of the one-sided Agreement it drafted. Here, there is no single term or couple of terms that the Court could sever that would render the MAA enforceable. Thus, the Court must void the entire MAA.



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

**F. Defendant's Request to Strike Class Allegations and Stay the Action Must Be Denied.**

First, even assuming *arguendo* the delegation clause were enforceable, the Court, not an arbitrator, retains sole authority under the explicit terms of the MAA to determine the validity of the class, collective, and/or group actions and representative action waivers. Exhibit A, ¶¶ 8 and 9 ("[t]he Parties agree that a court, not an arbitrator, shall determine which Claims are subject to the duty to arbitrate under this Agreement.") The MAA explicitly carves Sections 8 and 9 out from the delegation clause and reserves them for judicial review. Exhibit A, ¶ 3 (exempting Sections 8 and 9). Because threshold enforceability remains squarely with the Court, these waivers fail for the same procedural and substantive unconscionability reasons detailed in Sections II.B and II.C, *supra*. This is further underscored by the fact that representative action waivers (such as PAGA representative action waivers) violate California public policy.[5] Consequently, the Court must invalidate these unlawful waivers and retain jurisdiction over Plaintiff's representative claims.

Second, Defendant's motion to strike class allegations at the pleading stage is impermissibly premature. Propriety of class treatment is properly evaluated under Federal Rule of Civil Procedure 23 following discovery. *See, e.g., Angulo v. Providence Health & Servs. Wash.*, No. 4:25-CV-05029-SAB, 2025 U.S. Dist. LEXIS 268911, at *22 (E.D. Wash. May 1, 2025) (declining to strike class claims prior to the filing of certification motion for lack of complete briefing specific to the issue). Striking class claims now would deny Plaintiff a full evidentiary record. Accordingly, the Court should deny Defendant's request to strike the class allegations and decline to stay the action.

**III. CONCLUSION**

For the reasons addressed above, Plaintiff respectfully requests that the Court deny

[5] Defendant's MAA contains explicit references to California law, including a waiver of the right to file a representative action under the Private Attorneys General Act ("PAGA"). Under California law, pre-dispute waivers of representative PAGA claims remain void and unenforceable as against public policy. *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 382–83 (2014)). Neither *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022) nor *Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104 (2023) altered this fundamental prohibition. To the extent Defendant's MAA contains a wholesale waiver of Plaintiff's representative PAGA claims, that waiver is invalid as a matter of law. *Adolph*, 14 Cal. 5th at 1118; *Galarsa v. Dolgen Cal., LLC*, 88 Cal. App. 5th 639, 652–54 (2023).



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

Defendant's MTCA in its entirety. Alternatively, should the Court conclude that a genuine dispute of material fact exists as to whether an agreement to arbitrate was formed, Plaintiff requests that the motion be denied without prejudice pending limited discovery on the issue of formation under 9 U.S.C. § 4.

RESPECTFULLY SUBMITTED AND DATED this 18th day of August, 2026.

**FERRARO VEGA EMPLOYMENT LAWYERS, INC.**

By: *s/ Lauren N. Vega*
Nicholas J. Ferraro (WSBA No. 59674)
Email: nick@ferrarovega.com
Lauren N. Vega (WSBA No. 65133)
Email: lauren@ferrarovega.com
Erin M. O'Leary (WSBA No. 46803)
Email: erin@ferrarovega.com
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Telephone: (619) 693-7727
Facsimile: (619) 350-6855

*Attorneys for Plaintiff*

*I certify that this memorandum contains 5,049 words, in compliance with the Local Civil Rules.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

*s/ Sarah Debolt*