THE HONORABLE GRADY J. LEUPOLD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| ETHAN EDGERTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AVENUE5 RESIDENTIAL LLC, a Delaware foreign limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 2:26-cv-02650-GJL<br><br>DECLARATION OF THEODORE BRAUN IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION<br><br>NOTE ON MOTION CALENDAR:<br>AUGUST 28, 2026<br><br>ORAL ARGUMENT REQUESTED |



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

I, Theodore Braun, declare as follows:

1. I am an attorney at law, duly licensed to practice before the Courts of the State of Washington and I am an attorney at Ferraro Vega Employment Lawyers, Inc., counsel of record for Plaintiff Ethan Edgerton, individually, and on behalf of other similarly situated putative class members. As such, I am familiar with the file in this matter and if called as a witness I could and would competently testify to the following facts of my own personal knowledge.

2. I make this Declaration in support of Plaintiff's Opposition to Defendant's Motion to Compel Arbitration and Stay Action.

3. A true and correct copy of the ExponentHR onboarding audit summary screenshot taken and attested to by Plaintiff Ethan Edgerton, *see* Declaration of Ethan Edgerton ¶ 9 ("Edgerton Decl.") filed concurrently herewith, which was provided to the undersigned counsel is attached at **Exhibit "1"** hereto.

4. A true and correct copy of the eight-page (including Appendix A) Avenue5 Residential LLC Confidential Information and Non-Solicitation Agreement also attested to by Plaintiff, Edgerton Decl. ¶¶ 8-10, which was provided to the undersigned counsel is attached at **Exhibit "2"** hereto.

5. A true and correct copy of the nine-page "HireUs – Avenue5 Residential" Webpage Printout from Defendant's own website accessed on August 13, 2026 by the undersigned counsel with the relevant quote "[b]ased in Seattle, we're a trusted partner to over 250 multifamily property owners nationwide" depicted at p. 1, is attached at **Exhibit "3"** hereto.

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

Executed on August 18, 2026, at Seattle, Washington.

By: ______________________ [signature]
THEODORE BRAUN



**Ferraro Vega Employment Lawyers, Inc.**
3333 Camino del Rio South, Suite 300
San Diego, California 92108
Phone: (619) 693-7727
Facsimile: (619) 350-6855

# EXHIBIT 1

## Documents

| Category | File Name | Info | Date | By |
|---|---|---|---|---|
| E-Signed Documents | 401(k) Summary Plan Description | Acknowledge | 12/6/2024 11:25:26 AM | EE |
| E-Signed Documents | Avenue5 Residential \| Photo and Video Release | Acknowledge | 12/6/2024 11:24:57 AM | EE |
| E-Signed Documents | Avenue5 Conflict of Interest Policy and Disclosure | Acknowledge | 12/6/2024 11:23:48 AM | EE |
| E-Signed Documents | Avenue5 Residential \| Password Policy | Acknowledge | 12/6/2024 11:23:30 AM | EE |
| E-Signed Documents | Avenue5 Residential \| Office365 Agreement | Acknowledge | 12/6/2024 11:22:54 AM | EE |
| E-Signed Documents | Avenue5 Residential \| Computer and Network Policy | Acknowledge | 12/6/2024 11:21:48 AM | EE |
| E-Signed Documents | 2024 Associate Handbook | e-Signed | 12/6/2024 11:20:26 AM | EE |
| E-Signed Documents | Avenue5 Residential \| Arbitration Agreement 2023 | Acknowledge | 12/6/2024 11:19:14 AM | EE |
| E-Signed Documents | Confidentiality and Non-Solicitation Agreement | Acknowledge | 12/6/2024 11:18:18 AM | EE |
| E-Signed Documents | Avenue5 401(k) Plan 2022 Automatic Enrollment Notice | Acknowledge | 12/6/2024 11:16:00 AM | EE |

# EXHIBIT 2

AVENUE5 RESIDENTIAL

# AVENUE5 RESIDENTIAL LLC
# CONFIDENTIAL INFORMATION AND NON-SOLICITATION AGREEMENT

As a condition of my employment with Avenue5 Residential LLC, its subsidiaries, affiliates, successors or assigns (together the "Company"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company or other consideration provided to me in exchange for signing this Confidential Information and Non-Solicitation Agreement ("Agreement"), and in connection with access provided to me of the Company's Confidential Information and trade secrets, I agree to the following:

1. *Confidential Information*.

A. *Company Information*. I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the officers of the Company, any Confidential Information of the Company, except under a non-disclosure agreement duly authorized and executed by the Company. I understand that "Confidential Information" means any non-public information that relates to the actual or anticipated business of the Company, including, but not limited to, financial information, financial analysis, market analysis, contracts, business plans, pipeline, operating and pricing strategies, cost and pricing information, contact information for the Company's investors, investor lists and investor information (including, but not limited to, investors of the Company with whom I became acquainted during the term of my employment), supplier and vendor information, associate information, methods of doing business, operating strategy, trade secrets, and any formula, pattern, compilation, program, device, method, technique or process that: (i) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

B. *Third Party Information*. I recognize that the Company has received and in the future will receive confidential or proprietary information from third parties, including but not limited to business partners, owners, contractors, suppliers and customers ("Third Party Confidential Information") subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I understand that Third Party Confidential Information includes, but is not limited to, personally identifiable information (PII) from applicants, resident, customers, suppliers, associates, consultants, contractors, advisors or third parties, including but not limited to names, addresses, telephone or facsimile numbers, Social Security Numbers, user names, passwords, background information, credit card or banking information, health information, contact information, or other information entrusted to the Company. I agree to hold all Third Party Confidential Information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as

AVENUE5 RESIDENTIAL

necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

C. *Exceptions.* My undertaking and obligations under Sections 1(A) and 1(B) will not apply to any Confidential Information or Third Party Confidential Information which: (i) is or becomes generally known to the public through no action on my part, (ii) is generally disclosed to third parties by the Company without restriction on such third parties, or (iii) is approved for release by written authorization of the Chief Executive Officer ("CEO") of the Company.

D. *Return of Company Property.* I understand and agree that all Confidential Information that I receive or create during my employment with the Company, belongs to the Company. I understand and agree that I have a duty and a responsibility to return all Confidential Information or Third-Party Confidential Information upon termination of my employment with the Company. I agree that, upon termination of my employment for the Company, or at any other time upon the Company's request, I will promptly deliver to the Company all Company property, documents, Confidential Information, and Third Party Confidential Information in my possession, including but not limited to data, documents, hard drives, electronic storage devices, and computer disks, copies, summaries, compilations or extracts of Confidential Information in any form whatsoever, Company-issued laptop computers, cell phones, mobile electronic devices, or smartphones. Also upon the termination of employment, or at any other time that the Company requests, I will: (1) immediately refrain from accessing any Confidential Information stored on any personal computers, personal handheld devices or any forms of electronic data storage, whether cloud-based or otherwise that I used in connection with the performance of services for the Company (collectively "personal devices/storage"); (2) allow the Company access to retrieve any Confidential Information stored on any personal devices/storage; and (3) if and when so directed by the Company, permanently delete and erase any Confidential Information stored on any personal devices/storage and/or provide access to allow the Company to do so. I agree to participate in an exit interview with a representative of the Company to discuss the return of the Company property, the process for removal and deletion of Company property and Confidential Information from my personal devices/storage, and my ongoing obligations under this Agreement.

2. *Conflicting Employment*. I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation or consulting directly or indirectly related to the business in which the Company is now involved or becomes involved during the term of my employment without advance notification to the Company, nor will I engage in activities that conflict with my obligations to the Company.

3. *Notification of New Employer*. In the event that I leave the employ of the Company, I hereby authorize the Company to notify my new employer about my rights and obligations under this Agreement.

4. *Non-Solicitation*.

A. *Non-Solicitation of Associates.* I agree that during my employment and for a period of 12 months following the termination of my employment, I will not, directly or indirectly, either individually or on behalf of any other entity or person, solicit, induce, recruit, or encourage any of the Company's associates with whom I worked during the 12 months prior to the termination of my employment to leave their employment, which means, among other things, that I will not: (i) disclose to any third party the names, compensation, contacts, backgrounds or qualifications of any such associates or otherwise identify them as potential candidates for employment or to provide services; or (ii) personally or through any other person approach, recruit, interview, or otherwise solicit such Company associates to work for me or any other person or employer or to terminate their employment with the Company or violate any agreement with or duty to the Company.

B. *Non-Solicitation Using Trade Secrets.* I understand that I may not use or disclose (or threaten to use or disclose) any Company trade secrets without the Company's consent. This obligation means, among other things, that I may not use the Company's trade secrets, whether directly or indirectly or on behalf of myself or others, to attempt to call on, solicit or obtain business from any actual or prospective client, customer, or business partner of the Company, other than for authorized Company investment and related business activities. This prohibition applies during and after my employment, so long as the information remains a trade secret. The Company considers the following information to be its trade secrets: financial analysis, market analysis, supplier and vendor lists, marketing methods, business plans, pending development, pipeline, cost and pricing information, operating strategy, and any other formula, pattern, compilation, program, device, method, technique, or process that: (i) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. I agree to take all reasonable steps to maintain the confidentiality of the Company's trade secrets.

5. *Conflict of Interest Guidelines*. I agree to diligently adhere to the Conflict of Interest Guidelines attached as Exhibit A hereto.

6. *Representations and Warranties*.

A. *Other Agreements.* I hereby represent and warrant that, except as I have disclosed in writing to the Company, I am not bound by the terms of any agreement with any previous employer or other party to refrain from using or disclosing any trade secret or confidential or proprietary information in the course of my work for the Company or to refrain from competing, directly or indirectly, with the business of such previous employer or any other party.

B. *Others' Confidential Information.* I hereby represent and warrant that my performance of all the terms of this Agreement and as an associate of the Company does not and will not breach any agreement to keep in confidence proprietary information, knowledge, or data

acquired by me in confidence or in trust prior to my work for the Company, and I will not disclose to the Company or induce the Company to use any confidential information or material belonging to any previous employer or others

7. *Employment At Will.* I understand that this Agreement does not constitute a contract of employment and does not imply that my employment will continue for any period of time. I acknowledge that I am an "at-will" associate, and that the Company has the right to terminate my employment at any time with or without cause, and with or without advance notice. I also have the right, if I so choose, to terminate my employment at any time.

8. *General Provisions*.

A. *Governing Law*.

For associates who do not work from home: this Agreement will be governed by the laws of the state where the associate was last employed by the Company. I hereby expressly consent to the personal jurisdiction of the state and federal courts located in the state where I was last employed by the Company for any lawsuit filed there against me by the Company arising from or relating to this Agreement.

For associates who work from home: this Agreement will be governed by the laws of the state of Washington. I hereby expressly consent to the personal jurisdiction of the state and federal courts located in Washington for any lawsuit filed there against me by the Company arising from or relating to this Agreement.

B. *Entire Agreement*. This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior discussions or representations between us including, but not limited to, any representations made during my interview(s) or relocation negotiations, whether written or oral. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the CEO of the Company and me. Any subsequent change or changes in my duties, salary, or compensation will not affect the validity or scope of this Agreement.

C. *Severability*. If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

D. *Successors and Assigns*. This Agreement will be binding upon my heirs, executors, administrators, and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

E. *Waivers.* No delay or omission by the Company in exercising any right under this Agreement will operate as a waiver of that or any other right. A waiver or consent given by the Company on any one occasion is effective only in that instance and will not be construed as a bar to or waiver of any right on any other occasion.

F. *Transfers.* I expressly consent to be bound by the provisions of this Agreement for the benefit of the Company or any subsidiary or affiliate thereof to whose employ I may be transferred without the necessity that this Agreement be re-signed at the time of such transfer.

G. *Arbitration.* Claims arising out of or related to this Agreement shall be governed by the parties' mutual agreement to arbitrate.

H. *Remedies.* The restrictions contained in this Agreement are necessary for the protection of the business and goodwill of the Company, and I consider them to be reasonable for such purpose. I recognize that irreparable damages would be caused to the Company, and that monetary damages would not compensate the Company for its loss, should I breach the terms of this Agreement. Accordingly, in addition to all other remedies available to the Company at law or in equity, upon a showing by the Company that I have violated or am about to violate the terms of this Agreement, I hereby consent to the entry by a court of competent jurisdiction of an injunction or declaratory judgment enforcing the terms of this Agreement, including without limitation preventing disclosure or further disclosure by me of the Company's trade secrets.

I. *Narrow Construction Where Necessary.* I agree that if any one or more of the provisions of this Agreement will for any reason be held to be excessively broad as to time, duration, geographical scope, activity, or subject, it will be construed by limiting and reducing it, so as to be enforceable to the extent compatible with the applicable law as it will then appear.

J. *DTSA Notice.* Pursuant to 18 U.S.C. 1833(b), an individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Further, an individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order.

K. *Permitted Disclosures.* I understand that nothing in this Agreement shall prohibit or discourage me from discussing or disclosing my wages or from disclosing information about the Company's working conditions. I also understand that nothing in this Agreement shall prevent me from disclosing relevant or responsive information to the EEOC, NLRB, DFEH or any other governmental body with respect to any claims or complaints or from participating in protected concerted activity. I understand that nothing in this Agreement precludes me from reporting possible violations of federal law or regulation to any governmental agency or entity, including but not limited to the Department of Justice, the Securities and Exchange Commission, Congress, and any agency Inspector General, or making other disclosures that are protected under the whistleblower provisions of federal law or regulation. I do not need the prior

authorization to make any such reports or disclosures and I am not required to notify the Company that I have made such reports or disclosures.

L. *Termination Certificate.* If requested to do so by the Company, I agree to sign a termination certificate in which I confirm that I have complied and will continue to comply with the requirements of this Agreement and that I am aware that certain restrictions imposed upon me by this Agreement continue after termination of my work for the Company. I understand, however, that my rights and obligations under this Agreement will continue even if I do not sign a termination certificate. I further agree that the Company is entitled to communicate my obligations under this Agreement to any future employer or potential employer of mine.

AVENUE5 RESIDENTIAL

**Exhibit A**

**AVENUE5 RESIDENTIAL LLC**

**CONFLICT OF INTEREST GUIDELINES**

It is the policy of Avenue5 Residential LLC (the "Company") to conduct its affairs in strict compliance with the letter and spirit of the law and to adhere to the highest principles of business ethics. Accordingly, all associates must avoid activities which are in conflict, or give the appearance of being in conflict, with these principles and with the interests of the Company. The following are potentially compromising situations which must be avoided. Any exceptions must be reported to the CEO and written approval for continuation must be obtained.

1. Revealing confidential information to outsiders or misusing confidential information. Unauthorized divulging of information is a violation of this policy whether or not for personal gain and whether or not harm to the Company is intended. (The Confidential Information and Non-Solicitation Agreement elaborates on this principle and is a binding agreement.)

2. Accepting or offering substantial gifts, excessive entertainment, favors, or payments which may be deemed to constitute undue influence or otherwise be improper or embarrassing to the Company.

3. Participating in civic or professional organizations where participation would likely result in divulging confidential information of the Company.

4. Initiating or approving personnel actions affecting reward or punishment of associates or applicants where there is a family relationship or is or appears to be a personal or social involvement.

5. Initiating or approving any form of personal or social harassment of associates.

6. Investing or holding outside directorship in suppliers, customers, or competing companies, including financial speculations, where such investment or directorship might influence in any manner a decision or course of action of the Company.

7. Borrowing from or lending to customers or suppliers.

8. Improperly using or disclosing to the Company any proprietary information or trade secrets of any former or concurrent employer or other person or entity with whom obligations of confidentiality exist.

9. Unlawfully discussing prices, costs, customers, sales, or markets with competing companies or their associates.

10. Making any unlawful agreement with any third parties with respect to prices.

11. Engaging in any conduct which is not in the best interest of the Company.

Each officer, associate, and independent contractor must take every necessary action to ensure compliance with these guidelines and to bring problem areas to the attention of higher management for review. Violations of this conflict of interest policy may result in discharge without warning.

# EXHIBIT 3

AVENUE5 RESIDENTIAL

LIVE WITH US HIRE US WORK WITH US



# Hire Us.

When you need some magic (or even a **miracle**).

# We get you to **flourishing**—*faster.*

MULTIFAMILY AND BTR PROPERTY MANAGEMENT | UNDERWRITING | CONSULTING | DUE DILIGENCE | MARKET ANALYSIS | BRANDING AND DESIGN | PORTFOLIO SERVICES

Whether you're a seasoned owner with an extensive portfolio or a first-time landlord with rental properties, we have the **knowledge, experience and proven track record to maximize your returns**. That's why we've been recognized as one of the best multifamily property management companies in the industry.

Based in Seattle, we're a trusted partner to over 250 multifamily property owners nationwide. We identify powerful investment opportunities, underwrite, and develop custom revenue-generating strategies for stabilized, development, renovation, mixed-use, and value-add assets nationwide in urban, suburban, and primary, secondary and tertiary markets.

Is your property or portfolio falling short of expectations? There's nothing we love more than orchestrating an epic turnaround, adding value to underperforming assets filled with less-than-happy residents. It's one of our specialties, along with impeccably choreographed integrations.

**We get your properties to flourishing—faster.**

Meet Our Leadership

Connect with Client Strategy

AVENUE5 RESIDENTIAL

LIVE WITH US HIRE US WORK WITH US

# We're **Different:**

P.S. It's not just the green.



**165k+**
APARTMENT HOMES

**825+**
PROPERTIES

**24**
STATES + WASHINGTON D.C.

**4k+**
ASSOCIATES

**2025**
Great Place to Work®
*9 Consecutive Years

**#6**
NMHC Top 50 Manager Ranking in 2026

**#4**
MHN'S TOP 50 MULTIFAMILY MANAGEMENT COMPANIES IN 2025

AVENUE 5 RESIDENTIAL

LIVE WITH US HIRE US WORK WITH US

ment

# More expertise.

Our scalable, customized approach to property management is centered around a deep understanding of the multifamily real estate industry and your unique needs. We're known for our commitment to asset optimization, quick performance turnarounds, hands-on approach to performance success, and responsive service and communication.

We carefully listen to your objectives, assess your property's potential, leverage insights and best practices from inside and outside the industry, and develop tailored strategies that align with your goals.

We bring vibrancy to places where performance has fallen flat, blending the tried-and-true with custom touches. We fine-tune our approach for every strategy, resident base, and market. We dig deeper into the details, asking, "Why?" and "What if?" We implement effective solutions quickly so that you see measurable results sooner.

## Client Testimonials

**Nicole Griffin,** Intercontinental

Going back to the very first asset that I personally gave to Avenue5, I remember sitting in the pitch and being asked, "Wh "What do you need?" the biggest thing for me was I needed a strong property manager. I needed a presence on site that personality, be outgoing, create a sense of community, and know the financials. A big ask, but I wanted your A+ property

AVENUE5 RESIDENTIAL

LIVE WITH US HIRE US WORK WITH US

# More value.

When you partner with us, you can expect a personalized, effective, and efficient multifamily operations approach that centers your needs, goals, and priorities. We work side-by-side with you to optimize the resident experience, maximize your property and portfolio performance, and navigate the ever-changing multifamily landscape.

We add value for your rental properties through our expertise in:

**Accounting:** Streamlining financial operations.

**Affordable Housing:** Expanding affordable housing opportunities and ensuring regulatory compliance.

**Ancillary Services and Supplier Partnerships:** Optimizing property value through strategic alliances.

**Branding and Design:** Crafting distinctive property identities that are infused throughout the customer journey.

**Career Development:** Empowering associate growth.

**Client Strategy:** Customizing owner solutions.

**Crisis Communications and Management:** Navigating emergencies with expertise



# More results.

We provide you with a comprehensive and holistic property management experience centered around property operations, integrations, services, and optimization strategies that drive success. Our 360-degree

and work with you as a team to evolve our approach. We're ready to accelerate your success and bring some magic (or even a miracle) when you need it the most.

Case Studies

# Let's turn up the volume.
# Make some NOI.

Yes, I want to **accelerate my portfolio's performa**

© 2026 All Rights Reserved | Avenue5 Residential, LLC

DESIGNED BY STUDIO5